```
         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MARYLAND

KENDRICK A. JORDAN              *

          Plaintiff             *

      vs.                       *   CIVIL ACTION NO. MJG-15-3253

MARYLAND TRANSIT                *
ADMINISTRATION, ET AL.
                                *
          Defendants
*     *      *      *      *      *      *      *      *
```

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendants' Motion to Dismiss [ECF No. 9] and the materials submitted related thereto. The Court finds no need for a hearing.

I. BACKGROUND

Plaintiff Kendrick A. Jordan ("Jordan" or "Plaintiff") sues Defendants Maryland Transportation Administration ("MTA") and Colonel John Gavrilis, Chief, Maryland Transportation Administration Police Force ("Gavrilis").  Jordan asserts claims for alleged racial discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, and for alleged violations of his constitutional rights pursuant to 42 U.S.C. §§ 1981 and 1983.

By the instant motion, Defendants seek dismissal of all claims.

II.  LEGAL STANDARDS

    A. Rule 12(b)(1)

    A motion to dismiss under Rule[1] 12(b)(1) raises the fundamental question as to whether this Court has jurisdiction to adjudicate the claims presented.  The Plaintiff has the burden of proving that subject matter jurisdiction exists when a defense is raised pursuant to Rule 12(b)(1).  Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

    Unlike a motion to dismiss filed pursuant to Rule 12(b)(6), which confines the Court's analysis to the allegations in the pleadings, a motion challenging subject matter jurisdiction under Rule 12(b)(1) allows consideration of evidence outside the Complaint.  Id.  In ruling on a 12(b)(1) motion, a court must "apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material facts exists."  Id.

    B. Rule 12(b)(6)

    A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint.  A complaint need only contain "'a short and plain statement of the claim showing that

---

[1]   All Rule references herein refer to the Federal Rules of Civil Procedure.

the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. However, conclusory statements or "a formulaic recitation of the elements of a cause of action will not [suffice]." Id.  A complaint must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557)).

Inquiry into whether a complaint states a plausible claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  Thus, if "the well-pleaded facts [contained within a complaint] do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 556 U.S. at 679 (alteration in original)).

III. DISCUSSION

    A. Alleged Facts[2]

Jordan, an African-American male, was hired by the MTA Police Force in 1999 as a Probationary Police Officer. Compl. ¶ 8.[3] He was promoted to the rank of Corporal in 2006 and to the rank of Sergeant in 2009. Id. He alleges that the MTA Police Force, and Gavrilis as Chief, engaged in several actions violative of his rights.

       1.   Denial of Promotion to Lieutenant

In or about the summer of 2011, Jordan took the Lieutenant's promotional exam, achieving the fourth-highest score. Id. at ¶¶ 9-10. The top four ranked candidates were African-American and the sixth was Caucasian. Id. at ¶ 10. In August 2011, the first- and second-ranked candidates were promoted to Lieutenant and the third-ranked candidate declined the promotion. Id. at ¶ 11. In January 2012, Gavrilis promoted the fifth- and sixth-ranked candidates, passing over Jordan. Id. at ¶ 13. In January 2012, shortly after being denied the promotion, Plaintiff filed an internal complaint, presumably alleging that he had been passed over for promotion because of his race. Id. at ¶ 14.

---

[2] The facts as related herein represent Plaintiff's version of the facts and are not necessarily agreed to by Defendants.
[3] All ¶ references herein are to the Complaint [ECF No. 1].

Jordan's factual allegations regarding his denial of the promotion consist of the conclusory statement:

> Upon information and belief, Plaintiff was denied promotion to the rank of Lieutenant based upon his race and/or color and his internal complaints of discrimination.

Id. at ¶ 15.

### 2. Performance Evaluation Lowered

In February 2012, Jordan's performance evaluation — that had initially stated his performance exceeded expectations — was revised by Gavrilis to indicate that his performance did not exceed expectations.  Id. at ¶ 16.

### 3. Demotion and Reprimand

In March 2012, Plaintiff was administratively charged with two infractions, one "serious" and one "minor."  Id. at ¶ 17. He was found not guilty of the major infraction but guilty of the minor one with a recommendation of the loss of three days of leave.  Gavrilis, however, increased the sanction to a demotion of two ranks from Sergeant to Police Officer, loss of ten days of leave, and issued a severe letter of reprimand.  Id. at ¶ 20. This was a more severe punishment than that recommended by the board that considered his infraction charges, and was more

severe than that typically given to departmental members for the same or similar infractions.  Id. at ¶¶ 19, 21.

### 4. Denials of Promotion to Corporal

In January 2013, Plaintiff took the exam for promotion to the rank of Corporal.  Id. at ¶ 22.  He was not promoted, despite being the only candidate eligible for the promotion.  Id. at ¶ 24.  In August 2013, Plaintiff inquired as to why Gavrilis had not promoted him and was told that Gavrilis "did not feel like he deserved to be promoted."  Id. at ¶ 27.

In October 2013, Plaintiff again took the Corporal's promotional exam and once again was the only eligible candidate for promotion.  Id. at ¶ 29.  Again, Gavrilis did not promote him, and the promotional list expired in March 2014.  Id. at ¶ 31.

## B. Procedural Steps

On September 25, 2013, or December 13, 2013,[4] Jordan filed a charge with the EEOC asserting claims for racial and retaliatory discrimination stating:

> I am currently employed as a Police Officer under the supervision of Sergeant Jackson.

---

[4]   The Complaint states that the charge was filed September 25, 2013 (¶ 28) but EEOC Charge, Ex. A to Defs.' Mem. [ECF No. 9-1] at 29 has a December 13, 2013 signing date.  The filing date difference is, in any event, immaterial.

> On October 15, 2012, I received a demotion of two ranks from Sergeant to Officer, a 10 day suspension, and a letter of reprimand for a minor infraction. Officer Donalie Anderson (White) however, only received a 35 day suspension and 10 days of lost leave for an egregious infraction. On August 23, 2013, I was denied a promotion to Corporal despite being the only eligible candidate.
>
> I was told I would not be promoted because Colonel John Gaurius, (sic) Chief of Police, did not feel I deserved it. No explanation was provided for Respondent's other actions.
>
> I believe I have been discriminated against because of my race (Black) and retaliated against for engaging in protected activity with respect to demotion and promotion in violation of Title VII of the Civil Rights Act of 1964, as amended.

EEOC Charge, Ex. A to Defs.' Mem. [ECF No. 9-1] at 29.

On July 27, 2015, Jordan received a "right to sue letter" and, on October 23, 2015, filed the Complaint [ECF No. 1] asserting claims in three Counts, (referred to as "Claims"):

First Claim – Violations of Title VII

Second Claim – Violations of [42] U.S.C. § 1981

Third Claim – Violations of [42] U.S.C. § 1983

C. First Claim – Title VII

Jordan asserts Title VII claims for alleged race-based discrimination and retaliation against MTA and Gavrilis. The Title VII claims against Gavrilis are invalid altogether because

7

he was not Jordan's employer.[5]  The Title VII claims against MTA, as discussed herein, shall be dismissed due to the absence of jurisdiction and the inadequacy of the pleading.

      1. Jurisdiction

"Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC."  Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002).  "[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies."  Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 406 (4th Cir. 2013).

In order to be timely under Title VII, administrative charges must be "filed within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  In Maryland, the 180-day period is extended to 300 days because "state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency."[6]  Tinsley v. First Union Nat'l Bank, 155 F.3d

---

[5]    Supervisors and managers sued in their individual capacities are not subject to liability under Title VII, which applies only to "employers."  Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998).

[6]    Jordan filed his 2013 charge with the Baltimore Community Relations Commission, a local agency, and the EEOC.

435, 439 (4th Cir. 1998), overruled on other grounds, Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 111 n.6 (2002).

Jordan asserts, in the Complaint, claims based upon alleged:

- Denial of promotion to Lieutenant in January 2012, Compl. ¶ 13;

- Downgrading of performance review in February 2012, id. ¶ 16;

- Excessive punishment for departmental infraction, including demotion and ten-day suspension in October 2012,[7] id. ¶ 20;

- Denial of promotion to Corporal in August 2013, id. ¶ 27; and

- Denial of promotion to Corporal in March 2014, id. ¶ 31.

However, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005). Allegations in an administrative charge are not "reasonably related" to the allegations in the complaint where they do not "implicate the same time frame, actors and discriminatory conduct." Johnson v. Balt. City Police Dep't,

---

[7] Plaintiff's complaint does not specify when this punishment occurred, however his EEOC charge alleges that it occurred on October 15, 2012. See EEOC Charge, Exh. 1 to Defs.' Mot. [ECF No. 9].

9

No. 12-cv-2519-ELH, 2014 WL 1281602, at *11 (D. Md. Mar. 27, 2014).

In Jordan's EEOC complaint he specifically referred only to the October 15, 2012 demotion and suspension, and the August 2013 denial of promotion. Since Jordan filed the EEOC Complaint[8] no earlier than September 25, 2013,[9] only the August 2013 denial of promotion was within 300 days of the filing and the October 15, 2012 claim is time-barred. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002); see also Van Slyke v. Northrop Grumman Corp., 115 F. Supp. 2d 587, 592 (D. Md. 2000) aff'd, 17 F. App'x 154 (4th Cir. 2001).

Jordan contends that, because he alleged a continuing action, none of the EEOC charge claims is untimely. It is true that a hostile work environment claim can include within it events occurring more than 300 days prior to the filing of the EEOC charge. See Nat'l R.R. Passenger Corp., 536 U.S. at 117 (determining that as long as one component act of a hostile work environment claim occurred within the filing period, the hostile

---

[8] The Court may consider the uncontested contents of the EEOC Charge in deciding a defendant's motion to dismiss Title VII claims. See CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co., 566 F.3d 150, 154 (4th Cir. 2009)("[C]ourts may consider a document that the defendant attaches to its motion to dismiss if the document was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.").
[9] The filing date alleged in the Complaint. ¶ 28. The EEOC complaint of record reflects a signature date of December 13, 2013, with some type of received stamp date in February 2014.

10

work environment claim is timely).  However, hostile environment claims are different in kind from discrete acts.  Id. at 115.  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" occur "on the day that [they] 'happened,'" and each "constitutes a separate actionable 'unlawful employment practice.'"  Id. at 110, 114.  To determine if a plaintiff has adequately alleged a hostile work environment claim, a Court must "look to all the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Id. at 116 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

Jordan's allegations do not, by any means, present a plausible hostile work environment claim.  The alleged unlawful actions represent a variety of conduct, occurring at specific times over a several year period, each of which would constitute independently actionable instances of discrimination.  See Edwards v. Murphy-Brown, L.L.C., 760 F.Supp. 2d 607, 619 (E.D. Va. 2011) ("A party may not attempt to make an earlier discrete discriminatory action, for which time has expired, timely once again by 'bootstrapping' it to a timely charge, even if both incidents are related.").

Therefore, the only act of discrimination timely presented in the EEOC charge is the August 2013 denial of promotion. However, the March 2014, denial of promotion to Corporal occurred after the filing of the EEOC complaint.  This action can be viewed as reasonably likely to grow out of an investigation of the 2013 denial of promotion charge.

Accordingly, the Court has jurisdiction over Jordan's Title VII charges only with regard to the 2013 and 2014 denials of promotion.

### 2. Adequacy of Pleading

Jordan's Title VII claims regarding the 2013 and 2014 denials of promotion are based upon asserted discrimination based on race and retaliation.

#### a. Race-Based Discrimination

In order to plead a plausible prima facie claim of race-based discrimination, Jordan must present factual allegations, not mere conclusions, to establish that he (1) was a member of a protected group, (2) was qualified for promotion, (3) did not get the promotion, and (4) that similarly situated employees outside of the protected group were treated more favorably. See  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93

(1973); <u>Holland v. Washington Homes, Inc</u>., 487 F.3d 208, 214 (4th Cir. 2007).

In regard to both the August 2013 and March 2014 denial-of-promotion claims, Jordan alleges that he was a member of a protected group and was qualified for promotion that he did not receive, but he does not plausibly allege that similarly situated employees outside of the protected group were treated more favorably.  In fact, no one was promoted during those time periods.  Jordan presents no more than conclusory statements that he was victim of racial discrimination.

He has not adequately pleaded a Title VII racial discrimination claim.

### b. <u>Retaliation</u>

To plead a retaliation claim, Jordan must present factual allegations sufficient to  present a plausible claim that

  (1) he engaged in protected activity,

  (2) an adverse employment action was taken against him, and

  (3) there was a causal link between the protected activity and the adverse employment action.

<u>Laughlin v. Metro. Washington Airports Auth.</u>, 149 F.3d 253, 258 (4th Cir. 1998).

There is no doubt that Jordan engaged in the protected activity of filing discrimination complaints in January 2012 and September or December 2013 and adverse employment actions (denial of promotion) were taken against him in August 2013[10] and March 2014.

However, Jordan has not presented factual allegations adequate to present a plausible claim that the August 2013 and/or March 2014 denials of promotion had a causal relation to his protected activities. The January 2012 complaint and the August 2013 denial were separated by more than a year, and the March 2014 denial occurred at least three months after the EEOC complaint. See Clark Cnty. School Dist. v. Breeden, 532 U.S. 268, 274 (2001)(suggesting that a three-month period is insufficient to establish causation based on temporal proximity). Nor has Jordan alleged that the Defendants even knew that he filed the 2013 EEOC discrimination complaint. Indeed, his allegation consists of stating the word "retaliation" twice. Compl. ¶¶ 35-36. This is by no means adequate to plead an action for retaliation.

---

[10] This action occurred before the filing of the EEOC complaint.

D. Second Claim - § 1981

Title 42 Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." 42 U.S.C. § 1981(a).  In 1991, § 1981 was amended to clarify that the language "make and enforce contracts" includes "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." See 42 U.S.C. § 1981(b); Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.  This amendment expanded the scope of the rights created by § 1981 to include the right to be free from racial discrimination and harassment in the workplace. See Dennis v. Cnty. of Fairfax, 55 F.3d 151, 155 (4th Cir. 1995).

However, when the defendant is a state actor, then "[t]o the extent that [racial discrimination] claims [are] pleaded under § 1981, they run afoul of Jett . . . . [which] held that when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violations of the rights guaranteed in § 1981.'"  Dennis, 55 F.3d at 156 (quoting Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 733 (1989)).

Accordingly, Jordan's § 1981 claims shall be dismissed and considered pursuant to § 1983.

E. Third Claim - § 1983

Jordan has sued Gavrilis[11] in his personal capacity pursuant to 42 U.S.C. § 1983.

To establish a § 1983 claim, a plaintiff must prove that a defendant:

1. Acted under color of state law,
2. Deprived him/her of a right secured by the Constitution, and
3. Is not entitled to qualified immunity.[12]

Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

There is no doubt that Gavrilis acted under color of state law and has no qualified immunity in regard to the claims asserted by Jordan because no reasonable official could believe that it is lawful to deny government employees promotions on the basis of their race. See Adams v. Univ. of Maryland at Coll. Park, No. Civ.A. AW-00-3177, 2001 WL 333095, at *3 (D. Md. Mar. 6, 2001).

---

[11] MTA, a state agency, would be entitled to dismissal by virtue of the Eleventh Amendment. See Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479 (4th Cir. 2005).

[12] That is, the right must have been clearly established at the time of events at issue. See Graham v. Gagnon, 831 F.3d 176, 182 (4th Cir. 2016).

16

Therefore, the question presented is whether Jordan has asserted a plausible, timely claim that Gavrilis deprived him of a constitutional right.

1. Timeliness

In Maryland, § 1983 "borrows" the three-year statute of limitations from analogous state law.  Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014).

Since this case was filed on October 23, 2015, claims based upon actions occurring prior to October 3, 2012, are time-barred.  See Hodge v. Coll. of S. Md., 121 F.Supp. 3d 486, 497 (D. Md. 2015).  Thus, the only timely § 1983 claims presented are for the August 2013 and March 2014 denials of promotion.

2. Adequacy of Pleading

Jordan has failed to plead a plausible claim that Gavrilis deprived him of rights, privileges, or immunities guaranteed by the United States Constitution or federal law.

Jordan does not state what constitutional right or federal law he claims was violated.  See Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979) ("Standing alone, § 1983 clearly provides no protection for civil rights since, as we have just concluded, § 1983 does not provide any substantive rights at all.").  Presumably, he wishes to assert his

17

Fourteenth Amendment right to the equal protection of the law.[13] See Holder v. City of Raleigh, 867 F.2d 823, 828 (4th Cir. 1989)("A state employee may still bring a Fourteenth Amendment challenge under 42 U.S.C. § 1983 to discriminatory employment decisions.").  Nevertheless, the pleading is inadequate.

The Court's analysis under Title VII applies to claims of unconstitutional employment discrimination under § 1983.  See id. at 828 ("Our analysis with respect to Title VII also governs plaintiff's claims under 42 U.S.C. §§ 1981 and 1983.").  Similar to his Title VII claim, Jordan fails to plead a plausible violation of the Equal Protection Clause of the Fourteenth Amendment.

In conclusory fashion, Jordan alleges that Defendants discriminated against him "on the basis of his race and/or color by . . . denying him job promotions afforded to similarly situated and/or less qualified employees of a different race or color."  Compl. ¶ 35.  He also states that he "has been subjected to discriminatory treatment on the basis of his race and/or color in the form of retaliation, desperate [sic] treatment and a hostile work environment."  Id. ¶ 33.

Such conclusory statements merely parrot the elements of the claim and are insufficient to render Jordan's claims of

---

[13] "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

18

relief plausible.  See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, the Complaint states that nobody was promoted to Corporal in 2013 or 2014, contradicting the allegation that the 2013 and 2014 denials were instances where Jordan was "den[ied] job promotions afforded to similarly situated and/or less qualified employees of a different race or color."[14]  Compl. ¶ 35.

Accordingly, Jordan has not adequately pleaded a constitutional or other violation.

## IV.  CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Dismiss [ECF No. 9] is GRANTED.
2. Judgment shall be entered by separate Order.

SO ORDERED, this February 2, 2017.

```
                          _____/s/_____
                            Marvin J. Garbis
                        United States District Judge
```

---

[14]   Furthermore, the complaint states that Gavrilis had previously promoted other African-Americans. Compl. ¶¶ 10, 11.